Last case argued this morning is 05-7155 Deshotel v. DVA. Mr. Jackson, whenever you're ready. May it please the court, I'm Francis Jackson. What's the proper pronunciation of that? Deshotel. Deshotel? Yes, sir. Thank you. May it please the court, I'm Francis Jackson. I appear this morning on behalf of Mr. Deshotel. And let me say that I need to start by apologizing. There is a typographic error in the brief. At the top of page 3, we dropped a line in the distinguished facts. The very top line, page 3, should simply read, An NOD was timely filed, contesting the effective date of the, and then it picks up with 70% psychiatric disability. What page is that, sir? Page 3. So what's the typo? We dropped the top line. The very top line should have read, An NOD was timely filed, contesting the effective date of the 70% psychiatric disability. I apologize for any confusion or inconvenience that caused. Returning to the merits of the case, as you know, Mr. Deshotel was in service in 1966. Your theory is that in 1985 there were two claims that were pending, right? Yes, sir. One for primary service connection and one for secondary service connection. Yes, sir. And that the R.O. discussed and acted on a primary service connection claim, but ignored the secondary service connection claim. Yes, your Honor. And the consequence of that is that the secondary service connection claim was still pending. Correct, your Honor. And therefore, when they allowed the secondary service connection claim, they should have gone back then and made 1985 the effective date. I couldn't have said it better. Okay. But the problem that I have with that is I would have thought that Andrews was saying that when you have an R.O. action here, that even though the R.O. doesn't discuss the claim, that it implicitly rejects the claim and that your remedy is cute. Your Honor, obviously you're more directly involved in the formulation of these decisions than I am, but I have understood the court's decisions to essentially run on two tracks, two parallel tracks. On the one hand, we know that when there is, in fact, finality, when the matter has been adjudicated, the claim has been decided, then there are only two alternatives. And as you point out, Q is one of them and the other being new material evidence. But I have read the court's decisions to this point at least and perhaps I've not appreciated the full significance of Andrews because I've read the court's decisions to this point to say that that's the finality track, but there is a separate non-final track which comes through, if you will, Roberson and Cook to the extent it overrules Hare but upholds Roberson and then move on to Zemre and Moody. And to the extent that the decision is non-final, then the proper attack is not CUE but simply to ask for adjudication. Well, I guess that would be true if somebody filed a claim with the R.O. and the R.O. did nothing at all. I guess that would still be true. But that's what you have here. No, but let's take it one step at a time. Certainly. I'll ask the government about it. I don't understand that the government can test that. There was a claim filed in just total silence that the effect of that is that the claim is still pending. And you're saying this should be treated that way. But we don't have total silence. We have an R.O. action, and the government is saying the R.O. action implicitly rejected the other claim. But stop and kind of think about what that means. If you put those up side by side, unless Andrews means more than I've taken it to mean and overrules Moody and Zembray, then you have to look at did the R.O. act on the claim. And there is no case law that I'm aware of, either as a precedential opinion from the CAVC or from this court, that says that once the claim is there, somehow it implicitly gets overruled without being mentioned. That just doesn't exist. The whole point of Moody and Zembray was the claim is there. At some point, you have to act on it and decide it. But what happens here is— But how long can that claim end? Until it's acted on. Forever? Theoretically, you're right. If it gets lost through the crash at the VA? I'm sorry? I don't see why not. The ultimate issue is you have the statute that creates informal claims, the regulation that creates informal claims. Once they're raised, until there's both a formal claim based on it and an adjudication of that claim, it remains pending. That's the case. So you're saying that in 1985, if he'd gone to the board from the R.O. decision and said, there's an error in the R.O. decision because I have two claims here, one for primary service connection and one for secondary service connection, and they didn't say anything about my secondary service connection claim. Are you saying that he couldn't have done that in 1985? Yes, Your Honor, because they would have said, that's still pending at the R.O. It hasn't been acted on all the way. Well, I thought that was exactly the thing that was rejected in Andrews, is that they wouldn't be allowed to say that. Your Honor, again, perhaps I've underrated Andrews, but I take it to mean, bear with me while I read the language. Let me see if I can say this correctly. What I thought distinguished this case from Andrews was that we have an adjudication of this claim in 2000. You have the board decision in 2003, which says that, well, no one's arguing that the claim wasn't raised in 84 when we filed it. No one's arguing that it was explicitly disposed of in 85. So we're going to say it was implicitly disposed of. And one of the things that I thought was very interesting about Judge Hagel's decision is he very carefully avoided that whole issue. He never once talked about this whole implicit denial. And I think there are reasons for that, Your Honor. I can't square implicit denial with the regulations. Now, to the extent that Andrews says something different, what I had taken Andrews to mean was that if you had a situation where the case gets all the way to the board and then the court at this point, the VA is not going to be allowed to say, well, the board hasn't had an opportunity to adjudicate it. It's still pending at the RO. We can't talk about it here. But they seemed in Andrews to be taking the same position that you're taking now on 1281. The opinion says the government urges the PDIU to claim it's still pending before the RO. Awaiting decision. And there's a veterans court in this court without jurisdiction because there's no board decision for us to review. And we said we disagree. We said it's not pending anymore. I understand that, Your Honor. And obviously, since you're the author of Andrews, I'd be presumptuous in telling you what it meant. No, no. Don't worry about that. Let me tell you how I think it fits together. It seems to me that Andrews makes perfect sense if you have a case where you're already at, you've been to the board about it, you've been to the court, and you're arguing that CUE can be a proper means to force them to act on this claim. I don't think that's problematic. It seems to me that's simply an alternate approach. But I don't see that that precludes the argument that we've made here, Your Honor, which is that when the claim is still pending, it's pending. Well, how could there be a CUE motion if they haven't acted on it? I mean, isn't the CUE motion necessarily assuming that there's some RO action to challenge? It seems to me that what the court has been roping for, and perhaps you've found in Andrews, is how you deal with cases where the RO has not acted squarely on an issue. I have understood Moody and Zemre to say that in those circumstances, there is a pending claim, and you can force them to adjudicate it either by coming to the court and saying, look, this hasn't been adjudicated. We want you to send it back to be acted on. Or by saying, as I understand the court to be saying in Andrews, that we're going to treat CUE as encompassing the failure to act, the failure to decide the claim. And we're going to say that that is an error that's within the scope of CUE, and we can force the RO to act on it. Now, that's how I have put these cases together. But isn't part of the problem that you have is that the VA treated this as a CUE instead of a direct appeal? They just said, basically, we're going to be looking at this action as a CUE because of the 1985 request. I don't see that as a problem in light of Andrews and Roberson and other cases in this court that say, we're not going to let you hold this kind of formalism against an unrepresented appellant. The fact that he filed an NOD that says, I want an earlier effective date. And the SOC says, well, we're treating that as CUE. And the board then says, we're treating that as CUE. I don't think somehow it stops this unrepresented appellant. And in fact, I think they were doing it actually out of the best of intentions. Keep in mind that the board decision here predates both Moody and Zemire. And there was, at best, confusion about how you raised that issue. I thought Moody and Zemire clarified it. Perhaps Andrews tells me I'm wrong, but that's not how I've read these cases to this point. What about the Maggott case, Maggott v. West? Maggott, to the extent it applies here, it seems to me, simply says when you've got a direct appeal, which is what we have here, there's no reason you can't raise different arguments at the court level than you raised at the board. And that's what I thought we were doing here. And as you know, Judge Hagel said, no, no. The board treated it as CUE. You're stuck with CUE. You didn't make the same CUE argument you made below. No jurisdiction at all. But were you couching it as a CUE argument? We did throw in a CUE argument, Your Honor, because it had been raised as that below. But we raised four issues at the CAVC. Three of them had nothing to do with CUE. In the fourth one, we said, well, you know, if this is CUE, then they should have ruled on this because the examiner said that there was a psychiatric issue, that the prognosis was only fair, and so on. But we couched it as a direct appeal, claimed it hadn't been adjudicated. And I think a fair reading of the record is that the board acknowledges that there's no explicit decision in 85 on this portion of the claim. They talk in at least four or five places. Yeah, but did you raise that? I think what Judge Callarosa is asking you is did you raise that outside of the CUE context? Yes, Your Honor, we did. I mean, if you look at Judge Hagel's opinion. Where is the pleading in the appendix there? No, Your Honor, we didn't conclude the briefs in the appendix. But the judge concedes that we did. If you look at page seven of the appendix, starting at the bottom line, in his principal brief, Mr. DiShado raises several arguments with respect to the regional office decision. And he goes on to mention them. And he talks specifically, and I'm frankly flipping through the page, about our claim that this was a pending claim in direct appeal. If you look at page six, he cites our arguments from the appellant's brief. In that second full paragraph. And says, for example, he argues that the regional office was aired by selecting an effective date in 1999 and not in 1984. And that his 1984 claim and the January 1985 regional office decision give rise to an informal claim of psychiatric disability that was not adjudicated until October 2000. And cites page eight of our brief. And that was, in fact, the presentation we made to the CAVC. We argued that this was simply a case that had not been adjudicated. That under Moody and Zemre, it should have been adjudicated. And that because the board conceded that there was no explicit adjudication and was relying on some penumbral, implicit adjudication, that we were entitled to have the court consider that issue in the direct appeal. Act on the effective date issue. And granted remanding the case for consideration of the point along that 1984 claim where the evidence supported the necessary facts to get to the finding that they later made in 2000. Thank you, Mr. Johnson. We'll restore two minutes of your rebuttal time. Thank you. I appreciate it. May it please the court. The Court of Veterans Claims correctly dismissed this appeal. This appeal amounts to an attempt to collaterally attack, if you would, the rating decision in 1985. There was one second issue there that was never decided. Well, the discussion of the court makes it very clear that that's not how the court analyzed the case. It might not be the way they analyzed it, but that claim was still pending, wasn't it? No, because the court's decision makes very clear that there was no claim. At page three of the court's decision, the court discusses what was in the record at the time. I'm sorry, I misspoke. It is page two of the court's opinion. And what we had here was a psychiatric evaluation which indicated that the veteran didn't have the secondary symptoms that he was claiming. And the court's analysis below is based upon its reading of the file as in 1985 as not presenting any clear claim of error. And that's reinforced, if you will. That's because we're looking at it as a cue. I don't believe so at all, Your Honor, because they analyzed it as cue based upon a reading of the file. And the reading of the file as of 1985 suggests there's no claim. The psychiatric evidence was there were none of these secondary symptoms. The claim for benefits didn't clearly indicate the secondary benefit. Well, let's go away from the fact. Let's assume hypothetically that they did make a claim in 1985 for secondary service connection. And let's assume in this hypothetical that the RO never said anything about it. This was a stand-alone claim, not one together with the primary. And it just got lost in the system. That claim would still be pending, right? I find nothing to suggest that it wouldn't be. No, no, no. That's not the question. Accept my hypothetical that there's an explicit claim and it gets lost within the Veterans Administration, lost for 20 years. And it's still pending, right? I've made numerous inquiries and researched it myself. I can find nothing to suggest that it would not be still pending. So, in other words, if there were a lone claim out there in 1984 and no action at all had been taken, I find no authority for the proposition that it couldn't first be acted upon by a rating decision at some later point in time. Okay. I appreciate that. Okay. Now, let's take this case where let's assume hypothetically that there was an explicit claim for secondary service connection and an explicit claim for primary service connection and that the R.O. addresses only the primary service connection claim. Are we to then read that decision as implicitly denying the secondary service connection claim also? Yes, because I think what Moody teaches is that if the notice of disagree—one has to look at the entire case file and see what's being presented. Assuming the rating decision in 1985 did not address the question of secondary symptoms, that could have been addressed in an appeal to the Board of Veterans' Appeals at that point in time. So, notwithstanding the failure of the rating decision that failed to address it, certainly that matter could be properly raised in an appeal to the BVA. That could be challenged now by Q. Exactly. And now the proper method of challenging that is Q. In other words, that you'd have to meet the burden to establish the existence of Q. But the argument here is a perhaps novel attempt at coming up with a completely new way to open long-decided ratings decisions, and that is an attempt to analyze those decisions and find particular issues which were not identified or specifically addressed. An attempt to argue that that failure to address all the issues presented in the record constitutes a basis for reopening the claim. And really what this amounts to is a second Q process, which would be considerably more advantageous to the veteran because, as the veteran here indicates, it would be less burdensome. And that explains the history in this case. The decision below is correct because the premise of the decision below is that there's no basis to undertake such a review. There's no authority that a long, dormant claim exists when there's been a rating decision which denied it. The veteran's remedy here, if he wasn't satisfied with the rating decision under the statutes and regulations in effect at that time, was to go to the Board of Veterans' Appeals and argue that there was an error at that point in time. He didn't do it. Therefore, the rating decision in 85 is entitled to finality. What he's tried to do in this case is, if you would, collaterally attack that rating decision by filing an entirely new claim. And here the Court of Veterans' Claims correctly analyzed that as if you would have a collateral attack on that earlier decision. They also focused on the particular language of the claim and suggested what the veteran was suggesting was that the psychiatric— And they found no error in the BVA's handling of this case for several reasons. One, as I pointed out, they discussed that the evidence doesn't clearly reflect a claim for secondary benefits. And when asked, Mr.—the veteran here— Excuse me, counsel, but was that decided by the RO at that time or just by the board? I'm sorry— On the secondary evidence that came up. That was not discussed by the RO back in 1985, was it? What I'm saying is that the Court of Veterans' Claims discussed the record as it existed before the rating officer in 1985 and concludes that in page 2 of the decision that these facts simply weren't present. What we had was a psychiatric evaluation that said no psychiatric symptomatology that would justify a higher rating decision. I'm not sure if I— But the second claim that was still pending before the RO was never discussed initially. Well, the thrust of the board's decision—excuse me, the thrust of the Court of Veterans' Claims' decision here is there was no claim before the RO. The Court here doesn't posit the existence of a clear claim for psychiatric—excuse me, for the primary and secondary. It says there was one claim, and it was adjudicated in 1985 in that rating officer's decision. So earlier there was posited the hypothetical of a pure claim that remains unadjudicated for 20 years. In its analysis of the facts in this case, the court below concluded that that wasn't the case and therefore rejected any recognition of an alternative theory of reopening, if you would, long-dormant— So the only way you're saying is that that can be reopened is by cue. Exactly. That's what the court below held. In all of its hurdles. Exactly. I'm aware—this is a novel theory, if you would, to reopen long-dormant and long-decided rating decisions. But this court has analyzed these situations and in numerous cases indicated that the proper method or vehicle of doing that is a cue point. And the veteran here doesn't challenge the court's analysis under cue, but asks this court to recognize, if you would, a parallel track for veterans that want to attack old rating decisions. And that is to analyze those decisions, to attempt to analyze whether there's some error or failure to address a particular claim, and then to recognize the possibility that a final adjudication of those claims could be held. And the veterans, of course, recognized in this case that the board gave a sympathetic reading to the veterans' claims. The veterans' claims really can't be read as suggesting this novel theory. And so what the BDA did here was recognize the only existing theory to attack these claims, and that is a cue claim. And it analyzed the claim under that basis and found that there was no entitlement. What this case amounts to is an attempt to reopen these old claims upon a completely new basis, and that is recognize the theory of, if you would, the lost claim situation, where a claim—a veteran submits a claim, the BDA takes no action on it, and many years later, action is taken. Now, Moody, in its progeny, suggests that where the veteran makes a request for certain benefits, and in the course of adjudication process, the Board of Veterans' Appeals doesn't address all the possible claims, given the sympathetic reading of his claim, that the veterans' court can still analyze those claims, and this court can still analyze those claims because they continue through the litigation. Moody can't be read to suggest that there's an alternative means other than cue to reopen old claims, and that's what this appeal is. It's an attempt to recognize, if you would, an alternative path to challenge the finality of decisions, of rating decisions, or arguably also BDA decisions that was decided long ago. I think it's important to emphasize that the reading here was sympathetic, that the Board of Veterans' Appeals recognized the only possible way under the existing case law to challenge these claims. The Court of Veterans' Claims analyzed the case, and they went and took a look as well at the particular matters that were before the rating official, and it's obvious they were not persuaded that this represented a two-claim case, a primary and secondary case. The file in this case, if anything, tends to disprove the existence of secondary benefits. In fact, the claim that the veteran makes here is that the psychiatric evaluation is wrong. This is what the BDA had before it, and that psychiatric evaluation is there was no claim. There was never an explicit claim in this case for secondary disability as a result of the head injury, and there was never an explicit claim. That's very clear in the claims file. What the BDA was confronted with was an argument that the psychiatric evaluation was incorrect, and in some manner should have revealed this information. And that seems complicated by an argument that was made before the Court of Veterans' Claims, and there was an argument made there concerning other hospitalization. That's not addressed in the Board's decision, and it was not supported by anything in the record, and it's not discussed in the Board's decision. But that may have some bearing on the issues that the veterans court addressed. Thank you, Mr. Miller. Mr. Jackson, you have two minutes. Thank you. Let me try to go right to the heart of this. The argument that's being made by the government is that these are reopen claims. Our whole point is there's no decision to reopen. It wasn't decided. And that's why you're outside of the queue. The problem with treating these as queue claims is that, remember, one of the requirements of queue is that you have to show the result would have been unequivocally different. Well, how do you do that if it wasn't decided to begin with? I mean, what's the basis? And in terms of appealing this, again, I'm not thinking of a case right off the top of my head, but there are several cases from the Court of Appeals for Veterans Claims which explicitly say that this issue wasn't decided at the Board. It remains pending at the RO. Therefore, we don't have jurisdiction. We're not going to decide it. And I think that's the correct analysis. I don't – that's why I haven't read Andrews as reaching as far as your questions would suggest. Well, it says specifically, it says the government argues that the TDIU claim is still pending before the RO, the same argument you're making now. And we say we disagree. And we went on and rejected it. Perhaps I should have anticipated that and brought this as a queue claim. Unfortunately, I didn't. But I am still of the view that if Moody and Zemre have any significance left to them and have not been initiated by Andrews, that this is at least an alternative approach. Thank you, Mr. Jackson. Case submitted. All rise.